# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| RONALD E. MARTIN,<br><br>   Plaintiff,<br><br>  v.<br><br>NANCY A. BERRYHILL,<br>Deputy Commissioner for Operations<br>performing the duties and functions not<br>reserved to the Commissioner of<br>Social Security,<br><br>   Defendant. | Civil Action No. 17-01049-CV-W-NKL |

## ORDER

Plaintiff Ronald E. Martin seeks review of the decision by Defendant denying his claim for

a period of disability and disability insurance benefits under Title II of the Social Security Act, as

amended, specifically, 42 U.S.C. § 405(g)(1981). For the reasons set forth below, the Court

affirms the ALJ's decision.

## I. BACKGROUND

In August 2015, at 49 years of age, Mr. Martin filed an application for a period of disability

and disability insurance benefits under Title II of the Social Security Act. Although he initially

alleged that he became disabled February 20, 2015, he subsequently amended his alleged onset

date to May 15, 2015. Tr. 10, 184, 186.

Mr. Martin's application was initially denied on October 21, 2015. Tr. 130. After a

September 26, 2016 hearing, an administrative law judge ("ALJ") found that Mr. Martin was not

under a "disability" as defined in the Social Security Act, and denied his application. Tr. 7-27.

The ALJ found that Mr. Martin had the RFC "to perform a range of work in which he can lift,

carry, push and pull 20 pounds occasionally and 10 pounds frequently," and "stand and/or walk a total of six hours out of an 8-hour day and sit 6 hours out of an 8-hour day." Tr. 16. The ALJ found that Mr. Martin "cannot work overhead" and "cannot climb ladders, ropes or scaffolds," but that he can "occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl." Tr. 16.

On November 9, 2017, the Appeals Council denied Mr. Martin's request for review. Tr. 1. The ALJ decision therefore constitutes Defendant's final decision.

## II.   DISCUSSION

The Court must affirm the Commissioner's denial of social security benefits "if substantial evidence in the record as a whole supports the ALJ's decision." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). "Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). The Court must consider both "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id*. (quotation marks and citation omitted). However, "as long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (quotation marks and citation omitted). The Court must "defer heavily to the findings and conclusions of the Social Security Administration." *Michel v. Colvin*, 640 F. App'x 585, 592 (8th Cir. 2016) (quotation marks and citations omitted).

Mr. Martin argues that (1) the ALJ erred in finding Mr. Martin's tinnitus, bilateral sensorineural hearing loss, neuropathy, and failed back syndrome not to be severe impairments; and (2) substantial evidence does not support the ALJ's decision because the ALJ erred in failing

to afford controlling weight to the opinion of Mr. Martin's treating physician. As discussed below, however, substantial evidence in the overall record supports the ALJ's findings on these points, and therefore, the Court affirms the decision.

### a. Does Substantial Evidence Support the ALJ's Evaluation of Mr. Martin's RFC with Respect to the Severity of His Impairments?

A claimant's RFC is the most he can do despite his limitations. *See* 20 C.F.R. § 404.1545(a)(1). Plaintiff bears the burden of proving disability and demonstrating a more restrictive RFC. *See Hargett v. Berryhill*, 703 F. App'x 445, 446 (8th Cir. 2017) (affirming district court's denial of supplemental security insurance benefits because claimant "did not establish a more restrictive RFC," noting that "the burden of persuasion to prove disability and demonstrate RFC remains on the claimant") (citation and quotation marks omitted); *Rogers v. Berryhill*, 702 F. App'x 502, 503 (8th Cir. 2017) ("[claimant] fell short of meeting his burden of establishing that his RFC was more restricted than the ALJ determined"). The ALJ is "not required to adopt [the claimant]'s unsupported subjective complaints and self-imposed limitations." *Perkins v. Astrue*, 648 F.3d 892, 902 (8th Cir. 2011)

Mr. Martin argues that the ALJ erred in finding that his tinnitus, bilateral sensorineural hearing loss, failed back syndrome, and neuropathy are not severe impairments.

### i. Tinnitus and Bilateral Sensorineural Hearing Loss

Plaintiff asserts that "the constant ringing in his ears caused problems for him using the telephone or hearing conversations when there is a lot of background noise" and "clearly would cause more than minimal limitations in his ability to perform basic work activities." Therefore, Plaintiff argues, the hearing-related impairments are severe. *See* Doc. 17, p. 3. However, Mr. Martin specified that, despite his impairments, he "could have a normal conversation as long as

there's not a lot of background noise." Tr. 108. Mr. Martin's counsel did not ask the vocational expert at the hearing whether someone who could not hear normal conversation amid background noise nonetheless could perform the jobs the vocational expert identified. Thus, Mr. Martin's counsel did not establish that the hearing problems were disabling. *See Baker v. Colvin*, 620 F. App'x 550, 557 (8th Cir. 2015) (rejecting claimant's argument that ALJ erred in not finding tinnitus disabling, noting that "[a]t Step Two, a claimant has the burden of providing evidence of functional limitations in support of his contention that he is disabled" and "[a]n impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities") (quotation marks and citations omitted).

### ii. __Failed Back Syndrome__

Mr. Martin insists that the ALJ erred in not concluding that his failed back syndrome was a severe impairment. Mr. Martin claimed that he had been unable to work since May 15, 2015 because of severe pain in his neck and back, despite multiple surgeries. Tr. 17, 96-99. He reported having constant, dull pain in his back that left him unable to walk more than 300 feet or to sit or stand for more than 20 minutes. Tr. 17, 98-99. He claimed that he had to lie down on his left side in the fetal position several times a day to find the "sweet spot" that would allow the pain to subside. Tr. 99-101.

However, the ALJ's conclusion regarding the intensity, persistence, and limiting effects of Mr. Martin's back-related impairments was supported by substantial evidence in the record. First, although Mr. Martin claims that his back and leg pain led him to leave his prior employment (Doc. 11, p. 13), in fact, he testified before the ALJ that he left that employment because of the effects of his medication on his ability to concentrate—it made him have "to read through things three or four times . . . to comprehend what [he's] getting into." Tr. 101, 104. Thus, his testimony was not

consistent. Moreover, Mr. Martin's testimony concerning the medication, too, was not consistent with other portions of the record. Months after leaving his job, Mr. Martin advised his pain specialist, Dr. Griffith, that he was trying to manage with as little pain medication as possible. Tr. 622 (Pain Management Report for October 13, 2015 visit: "He is trying to manage this with his [*sic*] little pain medication as possible."). Dr. Griffith also noted that a new medication "was tolerated" and "did seem to help with both his pain and his mood," and his only complaint was constipation. Tr. 18, 622.

Mr. Martin told the ALJ that he was working from home, sending emails, from February 25, 2015 until he left his job on May 10, 2015. Tr. 101. However, in late April 2015, a physician, Dr. Bell noted that "[h]e has been working very long hours" (Tr. 590), and he told another medical provider that he had retired from a physically intense job in May 2015 (Tr. 718). At a follow-up appointment in June 2015, he told Dr. Bell that he was "taking some time off work and [was] staying at home to take care of his grandkids." Tr. 577. At the hearing, when questioned by his attorney, he denied that he left work to watch his grandchildren, yet he acknowledged that he has watched his grandchildren "more" since he left his job. Tr. 106.

Mr. Martin does simple household chores, such as "picking up items like books, toys, etc." Tr. 237. He folds the household laundry, walks to the community mailbox and back, fixes his own lunch, watches television and reads, and drives 15 minute to his grandson's soccer games and back, spending 40 minutes sitting or standing there in the interim.[1] Tr. 100; *see also* Tr. 717 (noting in

---

[1] In contrast, Mr. Martin later stated that, "[o]nly on emergency do I drive and I scared the, the bejeezus out of my wife when she rode with me the last time we drove, so it was best that I let her do the driving." Tr. 105. His wife similarly checked a box to indicate that he rides in a car, rather than driving himself, in order to travel. Tr. 238. She stated that he drives "only when he has to and only short trips as driving causes back discomfort and numbness in his feet about 75% of the time." Tr. 238.

February 2016 that Mr. Martin "stated that he is able to do light housework and cook for himself if he paces his activities"). *See Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016) ("Inconsistencies between Julin's subjective complaints of disabling impairments and evidence concerning her daily living patterns also raised doubts.").

Although Mr. Martin claimed in the administrative proceeding to be unable to walk more than 300 feet at a time, he reported to Dr. Bell in March 2016 that he had been walking two miles each morning on a treadmill, and that "made a huge difference in terms of how he[felt] and his blood sugar." Tr. 634; *see also* Tr. 717 (noting that, in February 2016, Mr. Martin "reported that he walks for exercise"). Similarly, in June 2016, he told Dr. Bell that the two-mile walk was making "a world of difference." Tr. 638. Plaintiff argues that the testimony that he could not walk more than a city block at one time is not inconsistent with being able to walk two miles on a treadmill, because there was no indication in the record that Mr. Martin walked the two miles all at once, without breaks, and walking on a treadmill is qualitatively different from walking on an uneven street. But even if these purported distinctions were compelling, the burden of bringing evidence supporting them into the record was on Plaintiff, and he did not meet that burden.

As for the objective medical evidence, the ALJ observed—and Mr. Martin has not denied—that there was no medical evidence that Plaintiff sought treatment for neck pain since a November 2015 surgical evaluation for low back pain, which followed a February 2015 micro anterior cervical discectomy and fusion surgery. Tr. 19; *see also* Tr. 386-99. Indeed, at that evaluation, Mr. Martin reported that he had done "well" since his neck surgery (Tr. 646), and the medical provider, Dr. Bailey, noted, "Status post anterior cervical decompression and fusion without complication or sequelae, good clinical outcome" (Tr. 648).

---

With respect to the alleged back pain, the ALJ found that the record was devoid of any evidence showing a significant degree of nerve compression, muscle atrophy, paravertebral muscle spasm, sensory or motor loss, reflex abnormality, gait disturbance, or significantly reduced range of motion of the spine or joints.  Tr. 20.  The ALJ also observed that Mr. Martin's most recent physical examination of his low back and lower extremities was within normal limits.  Tr. 20; *see also* Tr. 760.  Mr. Martin has not challenged those findings.

Moreover, in July 2016, Mr. Martin reported that his medication was "helping with the back pain" (Tr. 762)—which further supports the ALJ's finding that the back pain was not a severe impairment.  *See Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.").

Thus, the objective medical evidence did not support Mr. Martin's allegations of disabling neck and back pain.  *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that, although ALJ cannot rely entirely on lack of objective medical evidence, the absence of objective medical evidence "is a factor an ALJ may consider").

In short, substantial evidence exists in the record that Mr. Martin's failed back syndrome was not a severe impairment.  *See id.*, at 1086 ("An ALJ may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'").

### iii.  <u>Neuropathy</u>

Mr. Martin argues that the ALJ's conclusion that his "neuropathy" was not a severe impairment was in error.  Mr. Martin complained repeatedly of numbness and tingling in his legs and feet.  However, even if neuropathy had been a medically determinable impairment for Mr. Martin, he failed to establish that the numbness or tingling would have significantly limited his "ability to do basic work activities."  *Id.*  In light of the evidence showing that Mr. Martin walked

two miles each morning on a treadmill and his other daily activities, substantial evidence in the record supports the ALJ's conclusion that Mr. Martin's "neuropathy" was not a severe impairment.

### iv.  **Combination of Impairments**

Given the daily activities discussed above, substantial evidence in the record as a whole supports the conclusion that even the combination of the foregoing impairments did not constitute a severe impairment.

*       *       *

For the reasons discussed above, Mr. Martin has failed to show that the ALJ's RFC finding was in error or unsupported by substantial evidence.

### b.  **Does Substantial Evidence Support the ALJ's Decision Not to Give Controlling Weight to the Opinion of Mr. Martin's Treating Physician?**

Plaintiff argues that the ALJ erred in declining to give controlling weight to the opinion of his treating physician, Dr. Griffith.

"Although a treating physician's opinion is usually entitled to great weight, it does not automatically control, since the record must be evaluated as a whole." *Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016) (quotation marks and citation omitted). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.* (quotation marks and citation omitted).

In September 2016, Dr. Griffith completed a Physical Residual Functional Capacity Questionnaire for Mr. Martin. Dr. Griffith opined that Mr. Martin could not walk even a single city block without rest or severe pain. Tr. 779. Yet, just three months earlier, Mr. Martin had been walking two miles each morning on a treadmill. Tr. 638. Dr. Griffith opined that Mr. Martin could

sit for just five to ten minutes at a time before needing to get up. Tr. 779. Yet, Mr. Martin himself testified that he could sit 15 to 20 minutes at a time (Tr. 98), and he testified that he regularly drives a maximum of 15 minutes one way to his grandson's soccer games and spends 40 minutes sitting or standing there (Tr. 100). Dr. Griffith opined that Mr. Martin could not sit and stand/walk for even two hours total in an eight-hour working day. Tr. 780. Yet, this opinion is inconsistent with Mr. Martin's descriptions of his daily activities, including his walking on the treadmill, his performance of simple household chores, his watching television, his driving, and his watching his grandson's soccer games. These inconsistencies between Dr. Griffith's opinion and other evidence in the record are sufficient to warrant discounting the doctor's opinion. *See Michel v. Colvin,* 640 F. App'x 585, 593 (8th Cir. 2016) (holding that inconsistency with other evidence in record "alone is sufficient to discount the opinion") (quotation marks and citation omitted).

Dr. Griffith also noted that Mr. Martin was awaiting permanent implantation of a spinal cord stimulator, but opined that, even with the stimulator, Mr. Martin would receive only some pain relief, but not enough to allow him to return to work. Tr. 781-82. However, the issue of whether a claimant is able to return to work is one reserved for the Commissioner, and "therefore is not the type of 'medical opinion' to which the Commissioner gives controlling weight." *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005); *see also Julin*, 826 F.3d at 1088 (noting that treating physicians' opinions are "given limited weight if they are conclusory").

Finally, Dr. Griffith's September 2016 opinions were not consistent with the records from Plaintiff's July 19, 2016 annual exam, which noted no gait abnormalities, normal tone and strength, and no edema, and that Mr. Martin stated that his medication was helping his back pain. Tr. 760, 762.

Because Dr. Griffith's opinion was conclusory and inconsistent with other evidence in the record, the ALJ's decision to discount it was appropriate. *See, e.g., Andrews v. Colvin*, 791 F.3d 923, 928-29 (8th Cir. 2015) (finding "appropriate[]" ALJ's giving "little weight" to treating physician's evaluation because it "was inconsistent with other record evidence," including notes showing control of pain through medication and the claimant's reports to other medical providers concerning her daily activities).

III.  **CONCLUSION**

For the reasons discussed above, the Court affirms the ALJ's decision.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated:  November 9, 2018
Jefferson City, Missouri